**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ANGELA SOUTHARD,                                        Case No. 1:16-cv-581

       Plaintiff,                                       Dlott, J.
                                                     Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Angela Southard filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On June 22, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") alleging disability beginning August 15, 2009[1]. (Tr. 129-30). *See* 42 U.S.C. § 405(g). After Plaintiff's application was denied initially and upon reconsideration (Tr. 79-80, 89-91) she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On March 14, 2014, ALJ Susan Giuffre held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On July 30, 2014, the ALJ denied

---
[1] At the hearing, Plaintiff amended her onset date to January 14, 2011.

1

Plaintiff's applications in a written decision.  (Tr. 17-26).  Plaintiff now seeks judicial review of the denial of her application for benefits.

The record on which the ALJ's decision was based reflects that Plaintiff was born in 1975 and was 39 years old at the time of the ALJ's decision.  She completed high school and vocational training for cosmetology.  She has past relevant work as a cosmetologist.  She alleges disability based primarily migraines and epilepsy.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "epilepsy and migraine headaches. (Tr. 19).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She can occasionally balance, climb ramps and stairs, but may never climb ladders, ropes or scaffolds, and must avoid all exposure to workplace hazards, including unprotected heights, proximity to industrial machinery, or engagement in commercial driving.

(Tr. 21).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as a cosmetologist. (Tr. 25).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff

argues that the ALJ erred by: 1) improperly weighing the opinion evidence; and 2) improperly evaluating Plaintiff's credibility. Upon close analysis, I conclude that neither of the asserted errors requires reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

4

**B. Specific Errors**

*1. ALJ's Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ failed to follow the "treating physician rule" and therefore erred by not giving controlling weight to an alleged opinion by treating physician Dr. Cavitt. (Doc. 7, 17-23). Notably, Plaintiff's contention lacks merit.

Here, the record contains the relevant medical and opinion evidence:

The record contains treatment notes from Jennifer Cavitt, M.D., Plaintiff's neurologist from 2009 through 2014. In September 2010, Dr. Cavitt referred Plaintiff to Sheetal Malik, M.D. for a multi-day inpatient video EEG monitoring. Upon completion, Dr. Malik instructed Plaintiff: "No driving, no working in high places, no using heavy machines or etc." (Tr. 712).

In January 2011, Plaintiff underwent a craniotomy and resection of areas of the brain identified as potential origination sites. (Tr. 22, citing Tr. 292). The surgery was accomplished without complication, but was only effective in the near-term. (Tr. 22, citing Tr. 292, 394). Since this procedure, the record indicates that Plaintiff's seizures have averaged about two per month and are typically nocturnal.

In June 2012, Plaintiff's physical examination revealed that her cranial nerves were normal, as was her sensation coordination, motor strength and range of motion. In October 2012, Plaintiff was consultatively examined by Jessica Twehues, Ph.D. Dr. Twehues found that Plaintiff had no severe psychological impairment. She further determined that Plaintiff would respond well to the stressors of day-to-day work, and would have no difficulties responding to others, no difficulties maintaining concentration,

persistence and pace, and would understand, remember and carry out instructions commensurate with a person of average intellectual function. (Tr. 726-733).

On November 5, 2012, Teresita Cruz, M.D. reviewed Plaintiff's medical file. Dr. Cruz found that Plaintiff had no exertional limitations. She further determined that Plaintiff could occasionally balance, climb ramps and stairs, could never climb ladders, ropes or scaffolds, and should avoid all exposure to workplace hazards, including unprotected heights and dangerous machinery. (Tr. 61-62).

On March 14, 2013, Mel Zwissler, Ph.D. reviewed Plaintiff's medical file at the request of the state agency. Dr. Zwissler found that Plaintiff did not suffer from any severe psychological impairment. Dr. Zwissler determined that Plaintiff had mild limitations in all fours areas of the paragraph B criteria. (Tr. 70-71). Also, in March 2013, Gary Hinzman, M.D., also reviewed Plaintiff's medical file and determined that Plaintiff's physical impairments did not result in any exertional limitations. Dr. Hinzman found that Plaintiff could never climb ladders, ropes or scaffolds and should avoid all exposure to workplace hazards. (Tr. 71-72).

In July 2013, Plaintiff reported that she was doing great, except for a flurry of seizures caused by missing doses of her medication. (Tr. 992).

In formulating Plaintiff's RFC, the ALJ assigned "significant weight" to the discharge instructions from Dr. Malik. As noted above, after a multi-day inpatient video EEG monitoring in September 2010, Dr. Malik instructed Plaintiff: "No driving, no working in high places, no using heavy machines or etc." (Tr. 712). While perhaps not a typical medical source opinion, the ALJ noted that these instructions discuss Plaintiff's functional restrictions due to her seizure activity. Additionally, the ALJ assigned

6

"significant weight" to each of the opinions of the state agency medical consultants and the consultative psychological examiner. (Tr. 24).

Plaintiff, however, contends that the ALJ's RFC assessment is not supported by substantial evidence because he failed to give controlling weight to the finding of Dr. Cavitt, Plaintiff's treating neurologist.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,* No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence.

Here, Plaintiff argues that Dr. Cavitt opined that Plaintiff "was disabled and unable to work sedentary," and further claims that the ALJ "recognized" this opinion by Dr. Cavitt but "did not give controlling weight to Dr. Cavitt's assessment[,] opting to rely upon the state review." (Doc. 7). However, the record fails to contain any opinion evidence from Dr. Cavitt that includes the language alleged by Plaintiff.[2] Notably, Plaintiff does not provide a citation in the record to this alleged opinion. It is well established that it is Plaintiff's burden to prove that she is disabled within the meaning of the Act, and that burden includes a duty to provide enough detail regarding her arguments for the Agency to properly analyze them and respond. 20 C.F.R. § 404.1512(a); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Plaintiff further argues that an ALJ must "choose between medical opinions of record" (Doc. 7 at 17). However, the responsibility for assessing the RFC rests with the ALJ and not a doctor. *See* 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented, and the ultimate determination of disability is reserved for the ALJ. See 20 C.F.R. §§ 404.1513, 404.1527, 404.1545.

---

[2] Plaintiff's attorney submitted an opinion from Dr. Cavitt dated September 9, 2014, which was more than a month after the ALJ issued her decision in this case and, thus, not before the ALJ. (Tr. 1101). However, even that opinion did not contain the statements alleged by Plaintiff in her brief. Dr. Cavitt does not say anything about sedentary work, and although she refers to Plaintiff's seizures as "disabling seizures," she later states that the seizures "obviously make gainful employment extremely challenging, as she cannot drive due to frequent seizures." (Tr. 1101). Although Dr. Cavitt may consider the inability to drive to be "disabling," that is not part of the definition of disability under the Act. Moreover, this information was not presented to the ALJ prior to the issuance of her decision, nor does Plaintiff attempt to explain why she did not submit this information to the ALJ.

8

Here, the ALJ's decision clearly indicates that she gave significant weight to each medical opinion of record. In this regard, the ALJ analyzed the record in detail and explained the reasons behind each of her findings, including the weight she gave to each medical source opinion and the reasons for that weight.

The ALJ noted that Plaintiff underwent a craniotomy and resection of areas of the brain identified as potential origination sites. (Tr. 22, citing Tr. 292). The surgery was accomplished without complication, but was only effective in the near-term. (Tr. 22, citing Tr. 292, 394). The ALJ also pointed to the fact that Plaintiff's seizures averaged only 1-2 per month and were generally nocturnal. (Tr. 23, citing Tr. 45, 210). The ALJ noted that the treatment records indicate that Plaintiff's physical examinations have been consistently, although not universally, reported with minimal or normal findings. (Tr. 23, citing Tr. 435-36, 518, 1064). The ALJ further considered that Plaintiff stopped working in 2009 for reasons other than her health-related impairments. (Tr. 24, 38-39, 729).

For these reasons, the undersigned finds that the ALJ properly evaluated Plaintiff's RFC and her rationale in support of her findings is supported by substantial evidence and comports with Agency regulations and controlling law.

2. *ALJ's credibility finding*

Plaintiff's statement of errors also asserts that the ALJ did not properly assess the credibility of her allegations, or of her husband's testimony. (Doc. 7 at 23-26). Plaintiff's contentions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,*

9

486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001).

The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Here, in assessing Plaintiff's credibility, the ALJ properly considered that Plaintiff made inconsistent statements on dispositive issues related to her claims. (Tr. 24). See *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). As noted above, the ALJ noted that Plaintiff originally asserted that she had to leave her job in 2009 because

11

of her health-related limitations, but later admitted and testified that she left her job for other reasons, nor did she look for other jobs after that time. (Tr. 24, citing Tr. 39, 144).

Additionally, the ALJ noted that Plaintiff listed medication side effects in her function report (Tr. 170), but denied any such side effects in her subsequent disability report (Tr. 181), and listed another, different list later in the administrative process. (Tr. 188). Additionally, Plaintiff testified that side effects of her medication were "depression, anxiety, and it's off and on," but upon further questioning, admitted that she attributes the depression and anxiety to her "change of []lifestyle [and] loss of independence." (Tr. 44).

As noted by the Commissioner, the ALJ also considered the evidence provided by Plaintiff's husband, Terry Southard. (Tr. 24-25). In evaluating Mr. Southard's allegations, the ALJ noted that he was qualified as a firefighter/EMT and had consistent exposure to Plaintiff, yet also noted that he had a close, familial relationship with Plaintiff which "might tend to color his opinion" in favor of her allegations. (Tr. 24). Nonetheless, the ALJ gave "considerable weight" to Mr. Southard's description of Plaintiff's seizures as he consistently saw them first hand. However, the ALJ accorded "little weight" to Mr. Southard's report that the seizures increased in frequency and intensity because they were inconsistent with the records from Plaintiff's treating doctor. (Tr. 25).

The ALJ also properly considered Plaintiff's ability to engage in certain daily activities. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186. For example, the ALJ noted that Plaintiff was able care for a young

child at home without any particular assistance and by herself each third day when her husband was "on duty" for his job. (Tr. 23). The ALJ also noted that Plaintiff reported being able to attend to her personal hygiene and grooming, engage in typical household chores, including cleaning, laundry and meal preparation, shop in stores, manage her own medications and finances, host dinner parties and cook-outs, maintain an email account, read, work crossword puzzles, and visit with others regularly for pleasure. (Tr. 23). The ALJ pointed out that "[d]espite the allegations of preventing all work, the record reflects that [Plaintiff] went on a vacation to Florida since the alleged onset date." Although the ALJ also noted that a vacation and disability are not necessarily mutually exclusive, but emphasized that Plaintiff's decision to go on vacation tends to suggest that the alleged symptoms and limitations may have been overstated. (Tr. 23). Such consideration is not erroneous. See *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 686 (6th Cir. 1992) (The ALJ properly noted that "plaintiff typically engaged in such household chores as grocery shopping (and carrying the bags), dishwashing, cooking, sweeping and driving. Therefore, the ALJ concluded that plaintiff's pain would not be so disabling as to prevent him from engaging in gainful employment").

This Court must affirm so long as substantial evidence exists in the record as a whole to support the ALJ's decision, even if substantial evidence also can be found to support a contrary conclusion as to the credibility of a plaintiff's complaints. Although this Court may have taken another view of these facts and decided them more favorably, the ALJ was well within her zone of choice to decide them against Plaintiff's claim. *Felisky,* 35 F.3d at 1035. Accordingly, reviewing the record as a whole, the

undersigned concludes that substantial evidence exists to affirm the ALJ's credibility finding.

Accordingly, the ALJ's decision is substantially supported in this regard.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) the decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANGELA SOUTHARD,                                           Case No. 1:16-cv-581

      Plaintiff,                                         Dlott, J.
                                                                       Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).